**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Interlake Material Handling, Inc., *et al.*,[1] | ) | Case No. 09-10019 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Requested Hearing Date: February 3, 2009 at 3:00 p.m. (ET)**
**Requested Objection Deadline: February 3, 2009 at 12:00 p.m.(ET)**

**MOTION OF THE DEBTORS FOR ORDER PURSUANT TO**
**SECTIONS 327(a), 328 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING**
**EMPLOYMENT OF GREAT AMERICAN GROUP, LLC AS**
**AUCTIONEER FOR THE DEBTORS AND AUTHORIZING THE SALE OF ASSETS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court, pursuant to sections 327(a), 328(a) and 363 of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code") and Rules 2002, 6004, 9006 and 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the Debtors to (i) employ and retain Great American Group, LLC ("Great American") as auctioneer for the Debtors in their chapter 11 cases and (ii) sell certain assets through an auction, auctions or other sales conducted by Great American. In support of this Motion, the Debtors rely on the Declaration of Mark P. Naughton, Senior Vice President and General Counsel of Great American (the "Naughton Declaration") and respectfully state as follows:

**JURISDICTION**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Interlake Material Handling, Inc. (9435); United Fixtures Company, Inc. (2048); UFC Interlake Holding Co. (9905), and Conco-Tellus, Inc. (9950). The address for all of the Debtors is 1230 E. Diehl Road, Suite 400, Naperville, Illinois 60563, except for United Fixtures Company, Inc., whose address is 4300 Quality Drive, South Bend, Indiana 46628.

1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 327, 328 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006 and 2014.

## BACKGROUND

2. On January 5, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession. On the Petition Date, the Debtors requested approval of bid, auction and sale procedures to effectuate a sale, to Mecalux Industries, Inc. ("Mecalux") or any party that submits a higher or otherwise better bid, of substantially all of the assets necessary to continue their operations as a gong-concern (the "Going-Concern Sale").

3. On January 15, 2009, the Office of the United States Trustee (the "United States Trustee") appointed a creditors' committee (the "Committee") in the Debtors' chapter 11 cases.

4. UFC Interlake Holding Co. is a holding company for its two wholly-owned subsidiaries, United Fixtures Company, Inc. ("United Fixtures") and Interlake Material Handling, Inc. ("Interlake"). The fourth Debtor, Conco-Tellus, Inc., is a wholly-owned subsidiary of Interlake.

5. Collectively, the Debtors are a leading independent, single-source, value-added supplier of heavy-duty storage and order fulfillment systems, serving a variety of customers in both retail and industrial markets throughout North America.

6. Although the Debtors intend to sell most of their assets in the Going-Concern Sale, the Debtors own many assets (including the assets identified on attached **Exhibit**

2

**D)** (the "Assets") that are not necessary for their continued operations and are of little or no interest to Mecalux and, all preliminary indications indicate, other potential going-concern purchasers. The Assets include the remaining contents of the Debtors' facilities on Third Street in Niles, Michigan (the "Third Street Facility"), on Howard Street in Niles, Michigan (the "Howard Street Facility"), and in Imperial, California (the "Imperial Facility" and, together with the Third Street Facility and the Howard Street Facility, the "Facilities") and consist of, among other things, productions lines that are attached to the leased Facility where they reside. Many of the Assets are expensive to detach and cumbersome to move, which greatly reduces, and may eviscerate, their value. Many of the Assets, including the Assets at the Imperial Facility, are old and/or outdated equipment that may be of little or no value to the Debtors' estates. Indeed, to the extent the Debtors are unable to sell such Assets, they likely will be forced to abandon them.

7.  All of the Facilities are leased. The Debtors do not conduct operations at any of the Facilities and either already have moved, or will move, to reject the leases for the Facilities in order to minimize administrative expenses of their estates. The Debtors intend to sell the Assets in and vacate the Third Street Facility and the Imperial Facility on or before February 28, 2009. The Debtors intend to sell the Assets in and vacate the Howard Street Facility before the end of March, 2009. The Debtors have moved, or will move, to reject the lease for each Facility effective as of the date by which they intend to vacate such Facility. The Debtors carefully considered the monthly rent and other costs for each Facility and the anticipated sale proceeds for the Assets located at each Facility when establishing the foregoing lease rejection dates. If the Debtors are not able to observe the foregoing timeline, then they will be forced to expend significant amounts to continue to house the Assets and likely receive no additional

benefit for expending such sums. Thus, it is imperative that the relief requested in the Motion be granted as expeditiously as possible so that the Debtors can observe this timeline.

**RELIEF REQUESTED**

8.  By this Motion, the Debtors request entry of an order: (a) authorizing the retention and employment of Great American as auctioneer to the Debtor, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014, effective as of January 19, 2009; and (b) authorizing the sale of the Assets by Great American through an auction to be held on February 18, 2009, pursuant to section 363 of the Bankruptcy Code.

**BASIS FOR RELIEF REQUESTED**

A.  Retention of Great American as Auctioneer for the Debtor

9.  Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

10.  Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

11. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of accountants . . . or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed R. Bankr. P. 2014

12. The Debtors have an immediate need to remove and liquidate the Assets located at the Facilities. The Debtors have determined that, in their business judgment, the retention of a qualified auctioneer, who has substantial experience, is beneficial and will result in the greatest return from the disposition of the Assets. The Debtors may also use the services of Great American to sell Assets under separate order of this Court, as contemplated in the Agreement (as defined below). Accordingly, the Debtor seeks to employ Great American on the terms and conditions set forth in the Consulting Agreement (the "Agreement"),[1] substantially in the form annexed hereto as **Exhibit B**, to provide such services, including, without limitation, the following:

   a. provide full time Supervisor or Supervisors to supervise and conduct Sales;

   b. oversee the liquidation of the Assets at each Facility, as discussed with and agreed to by the Debtors;

   c. determine and implement appropriate advertising to effectively sell the Assets;

   d. determine pricing and discounting of the Assets;

   e. provide such other related service deemed necessary or prudent by the Debtors and Consultant under the circumstances giving rise to any Sale;

---

[1] The summaries of the services to be provided by Great American and compensation structure are qualified in their entireties by the Agreement. If there are any inconsistencies between the summaries contained herein and the Agreement, the Agreement shall govern. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Agreement

  f. provide the Debtors with reporting and reconciliation of all accounting information in form reasonably acceptable to the Debtors;

  g. coordinate the timely pickup and removal of Assets by buyers from each Facility by the respective Sale Termination Date;

  h. assist in the coordination of scrap and salvage rights, which will be under the supervision of the Debtors; and

  i. within ten (10) days of conclusion of any Sale via auction, prepare and file with the Bankruptcy Court an itemized statement of the Assets sold, the name of each purchaser, and the price received by the Companies for each item or lot sold.

13. The Agreement provides for compensation to be paid to Great American as follows:

  a. a commission of ten percent (10%) of the proceeds realized from each Sale of Assets;

  b. a buyer's premium in the maximum amount of thirteen percent (13%) of the sale price of any Assets (to be paid by purchaser in addition to the sale price); and

  c. reimbursement of Sale Expenses in the maximum aggregate amount of $100,000.

14. The Agreement also provides that the Debtors shall indemnify Great American in accordance with Section 8.4 of the Agreement.

15. The Debtors believe that the fee structure is fair and reasonable in light of: (a) industry practice and prior precedent; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Great American's extensive experience; and (d) the nature and scope of work to be performed by Great American.

16. To the best of the Debtors' knowledge, as set forth in the Naughton Declaration, a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference, the principals and professional staff of Great American do not have any connection

6

DB02:7761739.1                               067999.1001

with the Debtors, their affiliates, creditors, or other parties-in-interest in these chapter 11 cases. To the best of the Debtors' knowledge, Great American is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

17. Accordingly, based on the foregoing, the Debtors request that the Court enter an order approving the retention and employment of Great American under the Agreement.

B. <u>Authority to Sell Assets Free and Clear of All Liens, Claims, and Encumbrances</u>

18. The Debtors request, pursuant to section 363 of the Bankruptcy Code, to sell the Assets through an orderly auction conducted by Great American on February 17, 2009. The Debtors submit that an orderly liquidation of the Assets is the optimal means of selling the Assets to realize the greatest return for the Debtors' estates.

19. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction." Fed.R.Bankr.P. 6004(f)(1).

20. To approve the use, sale, or lease of property out of the ordinary course of business under Bankruptcy Code section 363(b), this Court must find "some articulated business justification" for the proposed action. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the "articulated business justification" and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D.

7

Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

21.     Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Delaware & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

22.     There is a sound business justification for the Debtors' decision to proceed with the auction and sale of the Assets by Great American. As stated above, the Debtors do not use the Assets in their businesses. Neither Mecalux nor any other potential purchaser in the Going-Concern Sale has indicated any interest in purchasing the Assets. Moreover, the Debtors are accruing administrative expenses in excess of $100,000 each month for rent at the Facilities, solely to house the Assets. The Debtors will reject these leases after they have obtained maximum value for the Assets. Accordingly, expediency, maximization of value, and certainty are vital to the Debtors. The Debtors submit that the sale of the Assets through an auction (and possibly other

sales for which the Debtors would receive separate Court authority) conducted by Great American will result in the greatest return from the disposition of the Assets.

23. The Debtors intend that each sale of the Assets through the auction conducted by Great American will constitute a transfer of such assets of the Debtors' estates free and clear of all liens, claims and encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

24. The Debtors expect that their secured lenders will have no objection to the relief requested herein. Accordingly, the requirements of section 363(f) are met, and the proposed disposition of the Assets should be approved "free and clear" of any such liens, claims or interests, with any such liens to attach to the proceeds of the sale.

25. Within ten (10) days of the conclusion of each auction, the Debtors or Great American will file a schedule with the Court indicating: (a) the identity of the Assets sold; (b) the purchaser of each Asset sold; and (c) the consideration paid for each Asset sold.

26. Based upon the foregoing, the Debtors submit that to maximize the value of the Assets, the sale of the Assets through an auction or auctions conducted by Great American is

an exercise of sound business judgment, is in the best interests of the Debtors and their estates, and should be approved in all respects.

## **NOTICE**

27. Notice of this Motion will be provided to: (a) the United States Trustee; (b) attorneys for the Debtors' prepetition and postpetition lenders; (c) the Committee; and (d) those parties that have requested notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. LR 2002-1(b). The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant this Motion in all respects and grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      January 27, 2009

                YOUNG CONAWAY STARGATT & TAYLOR, LLP

                */s/ M. Blake Cleary*
                M. Blake Cleary (No. 3614)
                Edward J. Kosmowski (No. 3849)
                Kenneth J. Enos (No. 4544)
                The Brandywine Building
                1000 West Street, 17th Floor
                Wilmington, DE 19801
                Telephone: (302) 571-6600
                Facsimile: (302) 571-1253

                -and-

                WINSTON & STRAWN LLP
                Daniel J. McGuire
                Jeremy T. Stillings
                Myja K. Kjaer
                35 West Wacker Drive
                Chicago, Illinois 60601
                Telephone: (312) 558-5600
                Facsimile: (312) 558-5700

                Counsel for Debtors and Debtors in Possession

DB02:7761739.1                067999.1001