# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Interlake Material Handling, Inc., *et al.*,[1] | ) | Case No. 09-10019 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: February 17, 2009 at 11:30 a.m. (ET) |
| | ) | Objection Deadline: February 10, 2009 at 400 p.m.(ET) |

## DEBTORS' MOTION FOR AN ORDER TO ESTABLISH PROCEDURES FOR THE SALE OR ABANDONMENT OF CERTAIN ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), hereby move this Court, pursuant to sections 363 and 554 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code") for entry of an order establishing procedures to sell certain of the Debtors' assets outside the ordinary course of business, free and clear of all liens, claims and encumbrances, or alternatively, to abandon such assets (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Interlake Material Handling, Inc. (9435); United Fixtures Company, Inc. (2048); UFC Interlake Holding Co. (9905), and Conco-Tellus, Inc. (9950). The address for all of the Debtors is 1230 E. Diehl Road, Suite 400, Naperville, Illinois 60563, except for United Fixtures Company, Inc., whose address is 4300 Quality Drive, South Bend, Indiana 46628.

2. The statutory and rule-based predicates for the relief requested herein are sections 363(b) and 554 of the Bankruptcy Code and rules 2002, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On January 5, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession.

4. On the Petition Date, the Debtors requested approval of bid, auction and sale procedures to effectuate a sale, to Mecalux Industries, Inc. ("Mecalux") or any party that submits a higher or otherwise better bid, of substantially all of the assets necessary to continue their operations as a gong-concern (the "Going-Concern Sale").

5. On January 15, 2009, the Office of the United States Trustee (the "United States Trustee") appointed a creditors' committee (the "Committee") in the Debtors' chapter 11 cases.

6. Although the Debtors intend to sell most of their assets in the Going-Concern Sale, the Debtors own many assets that are not necessary for their continued operations and are of little or no interest to Mecalux and, all preliminary indications indicate, other potential going-concern purchasers (the "Assets"). The Assets include the remaining contents of the Debtors' facilities on Third Street in Niles, Michigan (the "Third Street Facility"), on Howard Street in Niles, Michigan (the "Howard Street Facility"), and in Imperial, California (the "Imperial Facility" and, together with the Third Street Facility and the Howard Street Facility, the "Facilities") and consist of, among other things, productions lines that are attached to the leased Facility where they reside. Many of the Assets are expensive to detach and cumbersome

to move, which greatly reduces, and may eviscerate, their value. Many of the Assets, including the Assets at the Imperial Facility, are old and/or outdated equipment that may be of little or no value to the Debtors' estates.

7. All of the Facilities are leased. The Debtors do not conduct operations at any of the Facilities and either already have moved, or will move, to reject the leases for the Facilities in order to minimize administrative expenses of their estates.

8. On January 27, 2009, the Debtors filed a motion requesting authority to, among other things, sell Assets at an open outcry auction (the "Auction") to be held in February (the "Auction Motion"). As of the date hereof, the Court has not yet heard the Auction Motion.

9. As explained in the Auction Motion, the Debtors intend to sell the Assets at the Third Street Facility and the Imperial Facility on or before February 28, 2009 and the assets at the Howard Street Facility before the end of March, 2009, in order to minimize administrative expenses of their chapter 11 cases.

10. Although the Debtors are hopeful that the Auction will be a success, they do not expect to sell all of the Assets at the Auction. Moreover, certain of the Assets are large pieces of equipment or lines of equipment that may be sold for greater value than may be received at the Auction if they can be sold as a package or to a broker via a negotiated process. To the extent that a higher price can be obtained through a negotiated transaction than at the Auction, the Debtors should not be forced to accept a below-market bid at the Auction. To the contrary, the Debtors hope to establish minimum bids for certain assets at the Auction by negotiating purchases with other buyers, which purchases would be subject to (a) no higher price being offered for such Asset at the Auction and (b) Court approval, either in accordance with this Motion and any order approving this Motion or a separate pleading.

DB02:7764322.1                                                                                                                067999.1001

11. Accordingly, the Debtors hereby seek authority (a) to sell the Assets not sold at the Auction to individual buyers, subject to the terms set forth herein and (b) to abandon Assets that are not sold at the Auction or otherwise.

## RELIEF REQUESTED

12. By this Motion, the Debtors seek to establish procedures to sell the Assets outside of the ordinary course of their business free and clear of all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code, or to abandon such Assets pursuant to section 554 of the Bankruptcy Code.

## BASIS FOR THE RELIEF REQUESTED

13. The Debtors desire to sell or abandon the Assets in order to maximize the value of the Assets and minimize the costs related to Assets that have no value to the Debtors' estates. The Debtors believe that the procedures set forth below, which provide authority to sell Assets below a threshold value without further order of the Court (although, in certain circumstances, after providing the Committee and others with notice and opportunity to object to such sale), will conserve the resources of both this Court and the Debtors by avoiding the need for separate motions to approve relatively small sales. The Debtors submit that the entry of an order authorizing the sale or abandonment of the Assets without further notice or hearing, in accordance with the procedures set forth below, is warranted under the circumstances because the limited value of the Assets and the Debtors' need to sell and provide for the transportation of the Assets in a limited time frame does not justify or allow for the time and costs the Debtors' estates would incur if required to seek further relief with respect to a sale of the Assets.

A. **Procedures for Sale or Abandonment of Assets**

      14.    The Debtors seek authority to sell the Assets pursuant to the following procedures (the "Sale Procedures"):

      a.    If the Debtors agree to sell any one or more of the Assets to a purchaser who is not an insider (as that term is defined in the Bankruptcy Code) of the Debtors in exchange for consideration to be received by the Debtors in an amount that does not exceed $50,000, on a per-transaction basis, then the Debtors may sell such Assets without further order of the Court or notice to any party, other than the filing of a certification upon closing of the sale transaction or order of the Court.[2]

      b.    If the Debtors agree to sell any one or more of the Assets to a purchaser who (a) is not an insider (as that term is defined in the Bankruptcy Code) of the Debtors in exchange for consideration to be received by the Debtors in an amount that exceeds $50,000 but is less than $150,000,[3] or (b) is an insider of the Debtors in exchange for consideration to be received by the Debtors in an amount that does not exceed $50,000 (each event under "a" or "b" of this sentence, a "Proposed Sale"), then the Debtors will file with the Court a notice of such Proposed Sale (a "Sale Notice") and serve the Sale Notice by overnight, facsimile, electronic mail, or hand delivery on: (i) the Office of the United States Trustee (the "U.S. Trustee"); (ii) all known parties holding or asserting liens, claims, encumbrances or other interests in the Assets which are the subject of the Proposed Sale and their respective counsel, if known; and (iii) counsel to the Committee (collectively, the "Notice Parties").

      c.    The Sale Notice, to the extent that the Debtors have such information, will include: (i) a description of the Assets which are the subject of the Proposed Sale; (ii) the location of the Assets; (iii) the economic terms of the Proposed Sale; (iv) the identity of any non-Debtor party to the Proposed Sale; (v) a statement as to whether each of the non-Debtor parties to the Proposed Sale is an "affiliate" or "insider" of the Debtors (as those terms are defined in the Bankruptcy Code); and (vi) the identity of the party, if any, holding liens, claims, encumbrances or other interests in the Assets subject to the Proposed Sale.

      d.    The Notice Parties will have five (5) business days after the Sale Notice is filed and served to object to a Proposed Sale and to file such objection with the United States Bankruptcy Court for the District of Delaware in the Debtors' chapter 11 cases and to serve

---

[2] The Debtors intend to enter into agreements to sell Assets prior to the Court's approval of this Motion, provided, however, that such sales will be expressly contingent upon the Court's approval of this Motion and subject to the terms and conditions of any order granting the relief requested herein. After entry of an order approving the Motion, the Debtors will complete such sales in accordance with the terms of any orders granting this Motion.

[3] Asset sales where the sale consideration to be received by the Debtors from a purchaser of Assets, on a per-transaction basis, exceeds $150,000 are not covered by this Motion. Approval of such sales will be sought by separate motion after notice and a hearing. Alternatively, the Debtors reserve the right to seek, by separate motion, modification of any order authorizing the procedures described herein to increase the amounts authorized or to otherwise modify the authorized procedures.

such objection by overnight or hand delivery on the other Notice Parties and counsel to the Debtors (the "Sale Objection Deadline"). In the absence of an objection on or before the Sale Objection Deadline, the Debtors may consummate the Proposed Sale without further notice or hearing and such Proposed Sale will be deemed fully authorized by the Court.

    e.  If an objection to a Proposed Sale is timely filed and served by the Sale Objection Deadline, the Debtors will not proceed with the Proposed Sale unless: (i) the objection is withdrawn or otherwise resolved, or (ii) this Court overrules such objection, at either the next regularly scheduled omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors or at a hearing that is agreed to by the objecting party and the Debtors.

    f.  The Debtors will transfer the Assets sold to buyers in accordance with these Sale Procedures on an "AS IS, WHERE IS" basis without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended use or any other purposes; provided, however, that buyers will take title to the Assets free and clear of liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and other interests, if any, to attach to the proceeds received by the Debtors for the sale of the Assets.

    15.  In addition to the Sale Procedures, the Debtors seek this Court's approval of certain procedures for the abandonment of Assets (as set forth in greater detail below, the "Abandonment Procedures"). The Debtors seek approval of the Abandonment Procedures because the inability to consummate a sale of the Assets (either at the Auction or via the Sale Procedures) would indicate that such Assets have no meaningful monetary value to the Debtors' estates. Indeed, a failure to sell certain of the Assets will result in the accrual of additional administrative expenses to remove such Assets from the Facilities and store them. Accordingly, the Debtors have determined that the abandonment of the Assets, to the extent that they are not able to be sold or otherwise disposed of, may be in the best interests of the Debtors' estates and creditors.

    16.  The Debtors request authority to abandon the Assets after providing written notice by overnight, facsimile, electronic mail or hand delivery to the Notice Parties, which notice shall include (a) a list of assets being abandoned and (b) a statement of the Debtors'

attempts to sell the Assets subject to the notice (the "Abandonment Notice"). The Notice Parties will have five (5) business days after delivery of the Abandonment Notice to object to such proposed abandonment by filing an objection with the United States Bankruptcy Court for the District of Delaware in the Debtors' chapter 11 cases and serving such objection by overnight or hand delivery on the other Notice Parties and counsel to the Debtors (the "Abandonment Objection Deadline").

17. In the absence of an objection on or before the Abandonment Objection Deadline, the Debtors may abandon the Assets identified in the Abandonment Notice without further notice or hearing and such abandonment will be deemed fully authorized by the Court. If a Notice Party files and serves an objection prior to the Abandonment Objection Deadline, then the Debtors will not proceed with the proposed abandonment unless (i) the objection is withdrawn or otherwise resolved or (ii) this Court overrules such objection, either at the next regularly scheduled omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors or at a hearing that is agreed to by the objecting party and the Debtors.

**B.    Basis for Establishment of Procedures for Sale
or Abandonment of Assets**

18. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *In re Abbotts*

*Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

19. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

20. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a bankruptcy case. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

21.   As set forth more fully above, there is more than ample business justification for the approval of the Sale Procedures and the sale of the Assets in accordance with those procedures. The Debtors believe that the sale of the Assets will inure to the benefit of the Debtors' estates and creditors and, therefore, represents the exercise of the Debtors' sound business judgment. Furthermore, the Debtors' proposed sale of the Assets is in "good faith" within the meaning of the *Abbotts Dairies* analysis. The Debtors represent that no insider will gain an unfair advantage from the Asset sales pursuant to the Sale Procedures.

22.   Moreover, as previously set forth, the Debtors will provide the Notice Parties with a reasonable opportunity to review the adequacy of the price received for any sale of Assets in excess of $50,000. In light of the foregoing, the Debtors submit that the Sale

Procedures are a sound exercise of the Debtors' business judgment, and are necessary, prudent and in the best interests of the Debtors, their estates and creditors.

23. To the extent a sale is not consummated or a buyer is not found for the Assets, the Debtors, after determining in their business judgment that it is in the best interests of their estates and creditors, may seek to abandon any of the Assets pursuant to section 554(a) of the Bankruptcy Code. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Because the inability to sell certain Assets may only result in the unnecessary accrual of further obligations by these estates on account of, among other things, rent, storage or removal costs, the Debtors have determined that the abandonment of such Assets may be in the best interests of the Debtors' estates and creditors. As such, the Debtors submit that the Abandonment Procedures are an exercise of the Debtors' sound business judgment and therefore should be authorized and approved by this Court.

24. Bankruptcy Rule 2002(a)(2) generally requires a minimum of twenty (20) days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2). The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing. 11 U.S.C. § 102(1). Similarly, the court in *In re Lomas Fin. Corp.* held that notice is appropriate under section 102(1) of the Bankruptcy Code where it is "reasonably calculated,

under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

25. The Debtors believe that the notice and objection procedures contained in the Sale Procedures and the Abandonment Procedures are justified under the circumstances as the Sale Procedures are designed to maximize the value realized from the sales of the Assets. Because the asset sales are of a relatively small value and in light of the Debtors' need to sell or abandon the Assets to avoid paying additional rent at the Facilities, the usual process of obtaining Court approval of each individual sale would impose unnecessary administrative burdens on the Court, be prohibitively expensive to the Debtors' estates, and, in some instances, hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. To the extent sales of certain Assets cannot be consummated despite the Debtors' best efforts to do so, the Abandonment Procedures are designed to prevent the Debtors' estates from incurring unnecessary administrative obligations on account of such assets without burdening this Court with serial motions.

26. The Debtors believe that the manner of notice proposed in the Sale Procedures and the Abandonment Procedures is more than appropriate and preserves parties' due process rights. The Debtors will serve notice of each Proposed Sale and each Abandonment Notice on the Notice Parties. As such, all of the key constituencies in these cases and any party whose rights may be effected by a Proposed Sale or abandonment will receive adequate notice.

27. Finally, as noted above, the "notice and a hearing" requirement contained in section 363(b)(1) of the Bankruptcy Code is satisfied absent a hearing where there is an opportunity for a hearing and no party in interest timely requests a hearing. 11 U.S.C. § 102(1).

C.     **The Sale of the Assets Should be Approved Under 11 U.S.C. § 363(f)**

28.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (a) such a sale is permitted under applicable non-bankruptcy law, (b) the party asserting such a lien, claim or interest consents to such sale, (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (d) the interest is the subject of a *bona fide* dispute, or (e) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See* 11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

29.    Relief of the type sought herein has been routinely granted in this jurisdiction in other cases under similar circumstances. *See, e.g., In re Am. Fibers and Yarns*, Case No. 08-12175 (PJW) (Bankr. D. Del. Oct. 14, 2008) (approving sale of assets outside the ordinary course of business); *In re Nat'l Dry Cleaners*, Case No. 08-11382 (CSS) (Bankr. D. Del. Sept. 17, 2008) (same); *In re Powermate Holding Corp.*, Case No. 08-10498 (KG) (Bankr. D. Del. Apr. 17, 2008) (same); *In re Am. Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 28, 2007) (same); *In re HomeBanc Mortgage Corp.*, Case No. 07-11079 (KJC) (Bankr. D. Del. Oct. 17, 2007) (same); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. May 16, 2007) (same).

30.    For all of the reasons set forth above, the Debtors respectfully request that the Court authorize and approve the Sale Procedures and the Abandonment Procedures as an exercise of the Debtors' sound business judgment.

DB02:7764322.1                                                                                                                                  067999.1001

## NOTICE

31. Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel to the Committee; (c) counsel to the Debtors' prepetition secured lenders; and (d) all parties entitled to notice pursuant to Del. Bankr. L. R. 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: Wilmington, Delaware
January 28, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/*

M. Blake Cleary (No. 3614)
Edward J. Kosmowski (No. 3849)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
Telephone: (302) 571-6600

-and-

WINSTON & STRAWN LLP
Daniel J. McGuire
Jeremy T. Stillings
Myja K. Kjaer
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600

Counsel for Debtors

DB02:7764322.1                                                                  067999.1001