# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Interlake Material Handling, Inc., *et al.*,[1] | ) | Case No. 09-10019 (KJC) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |

Ref. No. 27

## ORDER AUTHORIZING AND APPROVING (A) ACQUISITION AGREEMENT, (B) SALE OF CERTAIN ASSETS AND INTERESTS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) RELATED RELIEF

Upon the Motion of The Debtors' For Orders (I)(A) Approving Bid Procedures For The Sale Of Substantially All The Debtors' Assets, (B) Scheduling The Auction, (C) Authorizing Payment Of The Break-Up Fee And Expense Reimbursement, (D) Approving The Deposit Escrow Agreement (E) Scheduling The Sale Hearing, (E) Approving The Assumption And Assignment Procedures Related To The Sale And (F) Approving The Form Of The Sale Notice; And (II) (A) Authorizing The Sale Of Such Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) Authorizing And Approving Purchase Agreement; (C) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief dated January 6, 2009 [Docket No. 27] (the "Sale Motion")[2], notice of the Sale Motion being proper and sufficient and all interested parties having been afforded an opportunity to be heard with respect to the Sale

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Interlake Material Handling, Inc. (9435); United Fixtures Company, Inc. (2048); UFC Interlake Holding Co. (9905), and Conco-Tellus, Inc. (9950).  The address for all of the Debtors is 1230 E. Diehl Road, Suite 400, Naperville, Illinois 60563, except for United Fixtures Company, Inc., whose address is 4300 Quality Drive, South Bend, Indiana 46628.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion, Acquisition Agreement, Transition Services Agreement or Escrow Agreement, as applicable.

Motion; and upon review and consideration of (i) the Sale Motion, (ii) objections thereto, if any, (iii) arguments of counsel and evidence proffered or adduced at the hearing on the Sale Motion, if any (the "Sale Hearing"); and (iv) the docket and proceedings in the above-captioned cases (the "Chapter 11 Cases"); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest:

THE COURT FINDS THAT:[3]

A.     This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Sale Motion are Bankruptcy Code §§ 105, 363 and 365, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014. Consummation of the transactions contemplated by this Order and the Acquisition Agreement (the "Proposed Sale") is legal, valid and properly authorized under the foregoing statutory predicates and all applicable requirements of such provisions have been complied with in respect of the Proposed Sale.

C.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004 and 6006, and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just

---

[3] Regardless of the heading under which they appear, any (1) findings of fact that constitute conclusions of law shall be conclusions of law and (2) conclusions of law that constitute findings of fact shall be findings of fact.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

D.    Actual notice of the Sale Motion, Sale Hearing, the Auction, the Proposed Sale and the assumption and assignment of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:   (i) the United States Trustee; (ii) counsel to National City Business Credit, Inc.; (iii) counsel to Roynat Business Capital, Inc.; (iv)  counsel to the Purchaser; (v) all parties known or reasonably believed to have asserted an Encumbrance on any of the Acquired Assets and/or Interests; (vi) the counterparties to each of the Assigned Contracts; (vii) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Acquired Assets and/or Interests; (viii) all taxing authorities having jurisdiction over any of the Acquired Assets; (ix) the Attorneys General in the States where the Acquired Assets and Interests are located; (x) the United States Environmental Protection Agency and comparable State agencies where the Acquired Assets are located; (xi) the Debtors' thirty largest creditors; and (xii) all parties that have requested personal notice pursuant to Bankruptcy Rule 2002  (the "Notice Parties").

E.    The Debtors published notice of the Sale, the time and place of the proposed Auction, and time and place of the Sale Hearing in The Wall Street Journal on January 27, 2009.

F.    In  accordance  the  provisions  of  the  Bid  Procedures  Order  and Assumption & Assignment Procedures, the Debtors have served notice of the Cure Amounts (the "Cure Notice") upon each counterparty to an Assigned Contract that the Debtors seek to assume and assign to the Purchaser on the Closing Date.  The service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect

3

DB02:7907190.4                                                                                                067999.1001

of establishing a Cure Amount for the respective Assigned Contract. Counterparties to Assigned Contracts have had an opportunity to object to the Cure Amount set forth in the Cure Notice.

G.    As evidenced by the affidavits of service filed with the Court in the Chapter 11 Cases, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing and the Proposed Sale has been provided in accordance with Bankruptcy Code §§ 102(1), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing and the Proposed Sale as required by the Bid Procedures Order. The foregoing notice described in paragraphs D through G hereof was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing and the Proposed Sale or the assignment of the Assigned Contracts is required.

H.    The Purchaser is not an "insider" of the Debtors, as that term is defined in the Bankruptcy Code.

I.    Purchaser is purchasing the Acquired Assets and Interests in good faith and is a good faith buyer within the meaning of Bankruptcy Code § 363(m), and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (1) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets and Interests; (2) Purchaser complied with the provisions in the Bid Procedures Order; (3) Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (4) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Proposed Sale have been disclosed; (5) Purchaser has not violated Bankruptcy Code § 363(n) by any action or inaction; (6) no common identity of directors or

4

controlling stockholders exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Acquisition Agreement and other agreements or instruments related thereto was at arm's-length and in good faith.

J.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. Although no auction was held, the date, time and manner of the potential auction was duly noticed.

K.     The Acquisition Agreement constitutes the highest and best offer for the Acquired Assets and Interests, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternatives. The Debtors' determination that the Acquisition Agreement constitutes the highest and best offer for the Acquired Assets and Interests constitutes a valid and sound exercise of the Debtors' business judgment.

L.     The Acquisition Agreement represents a fair and reasonable offer to purchaser the Acquired Assets and Interests under the circumstances of the Chapter 11 Cases. No other party has offered to purchase the Acquired Assets and Interests for greater economic value to the Debtors' estate than the Purchaser.

M.     The Escrow Agreement is integral to the Acquisition Agreement and the purpose of the Escrow Agreement is to act as a source of funds to secure any Indemnity Claims of the Purchaser Indemnitees.

N.     The Transition Services Agreement is integral to the Acquisition Agreement and represents a fair and reasonable offer for the Service Providers to provide the Services to the Sellers. No other party has offered to provide similar services for greater economic value to the Debtors' estate than the Service Providers.

O.     Approval of the Sale Motion, the Acquisition Agreement, the Transition Services Agreement and the Escrow Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

P.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Proposed Sale prior to, and outside of, a plan of reorganization.

Q.     The consideration provided by the Purchaser pursuant to the Acquisition Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession or the District of Columbia.

R.     The charges, fees and cost reimbursements set forth on Schedule A to the Transition Services Agreement constitute reasonably equivalent value and fair consideration for the corresponding Services under the Bankruptcy Code and the laws of the United States, any state, territory, possession or the District of Columbia.

S.     The Debtors have full corporate power and authority to execute and deliver the Acquisition Agreement, the Transition Services Agreement, the Escrow Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Acquisition Agreement.

T.     The transfer the Acquired Assets and Interests to the Purchaser will be as of the Closing Date a legal, valid and effective transfer of such assets and interests, and vests or will vest in the Purchaser all right, title and interest of the Debtors to the Acquired Assets and

DB02:7907190.4                                                                                    067999.1001

Interests free and clear of all Encumbrances accruing, arising or relating to any time prior to the Closing Date, except for any Assumed Liabilities under the Acquisition Agreement.

U.     The Debtors may sell the Acquired Assets and Interests free and clear of all Encumbrances (except for Assumed Liabilities under the Acquisition Agreement) because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances against the Debtors, their estates or any of the Acquired Assets or Interests who did not object, or who withdrew their objections, to the Proposed Sale or the Sale Motion are deemed to have consented to the Proposed Sale free and clear of their interest pursuant to Bankruptcy Code § 363(f)(2). Those holders of Encumbrances that objected fall within one or more of Bankruptcy Code 636(f)(1), (3)-(5) and are adequately protected by having their Encumbrances attach to that portion of the cash proceeds of the Proposed Sale attributable to their Encumbrances, in the same order of priority, with the same validity, force and effect that such holder had prior to the Proposed Sale.

V.     The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Acquisition Agreement and is in the best interests of the Debtors and their estates, their creditors and other parties in interest, and represents the reasonable exercise of the Debtors' sound business judgment.

W.     The respective amounts set forth in the Contract & Cure Schedule are the sole amounts necessary under Bankruptcy Code § 365 to cure all monetary defaults and pay all actual pecuniary losses under the respective Assigned Contract.

X.     The Debtors and/or the Purchaser have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Assigned Contracts, within the meaning of Bankruptcy Code § 365(b)(1)(A); and (ii) provided

7

compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assigned Contracts, within the meaning of Bankruptcy Code § 365(b)(1)(B).

Y.      The Debtors and/or the Purchaser have provided adequate assurance of future performance under the Assigned Contracts within the meaning of Bankruptcy Code § 365(b)(1)(C), (b)(3) (to the extent applicable) and (f)(2)(B).

Z.      To maximize the value of the Acquired Assets and Interests and preserve the viability of the businesses to which the Acquired Assets and Interests relate, it is essential that the Proposed Sale of the Acquired Assets and Interests occur within the time constraints set forth in the Acquisition Agreement. Time is of the essence in consummating the Proposed Sale.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Sale Motion is approved in its entirety and the relief sought therein is granted.

2.      All objections to the relief requested in the Sale Motion that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

3.      The Acquisition Agreement (including the amendment thereto attached hereto as Exhibit A), Transition Services Agreement, Escrow Agreement and all other ancillary documents, and all of the terms and conditions thereof, are approved.

4.      Pursuant to Bankruptcy Code § 363(b), the Debtors are authorized, empowered and directed to take any and all actions necessary or appropriate to (i) consummate the Proposed Sale of each of the Acquired Assets and Interests to the Purchaser pursuant to and in accordance with the terms and conditions of the Acquisition Agreement, (ii) close the Proposed

8

Sale as contemplated in the Acquisition Agreement and this Order and (iii) execute and deliver, perform under, consummate, implement and close fully the Acquisition Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Acquisition Agreement and the Proposed Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Acquisition Agreement and such ancillary documents.

5.      The terms and provisions of this Order shall be binding in all respects upon the Purchaser and Debtors, any trustees thereof, the estates, creditors and shareholders of the Debtors, all interested parties and their respective successors and assigns, including without limitation, any creditor asserting a lien in the Acquired Assets and Interests and all non-debtor counterparties to the Assigned Contracts.

6.      Pursuant to Bankruptcy Code §§ 105(a), 363(f) and 365, the Debtors are authorized and directed to transfer the Acquired Assets and Interests on the Closing Date. Such Acquired Assets and Interests shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and Interests and, upon the Debtors' receipt of the Cash Purchase Price *less* the Escrow Amount, shall be free and clear of all Encumbrances (except Assumed Liabilities) with all such Encumbrances to attach to the net proceeds of the Proposed Sale with the same validity, priority, force and effect that they had as against such Acquired Assets or Interests prior to the Closing.

7.      Except as expressly permitted or otherwise specifically provided by the Acquisition Agreement or this Order, all parties holding Encumbrances or interests in any Acquired Assets or Interests (except Assumed Liabilities) arising under or out of, in connection

9

with, or in any way relating to the Debtors, the Acquired Assets and Interests, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets and Interests to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Acquired Assets and Interests, such parties' interests in and to any Acquired Assets or Interests . On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances (except Assumed Liabilities) on the Acquired Assets and Interests, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist.

8.    All parties are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets or Interests to the Purchaser in accordance with the terms of the Acquisition Agreement and this Order.

9.    All parties that are in possession of some or all of the Acquired Assets or Interests on the Closing Date are directed to surrender possession of such Acquired Assets or Interests to the Purchaser or its assignee at the Closing.

10.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Encumbrances and other liens of record.

11.    If any party which has filed statements or other documents or agreements evidencing Encumbrances on, or interests in, the Acquired Assets or Interests shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances which the party has or may assert with respect to the Acquired Assets or Interests, necessary to evidence the release

10

the Debtors are authorized and directed, and the Purchaser is authorized, to execute and file such statements, instruments, ~~releases necessary to evidence the release~~ and other documents on behalf of such person or entity with respect to the Acquired Assets or Interests.

12.    This Order is and shall be binding upon and govern the acts of all parties, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other parties who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Acquisition Agreement.

13.    Funds to be deposited in the Escrow Account are not property of the Debtors or their estates in the above-captioned chapter 11 case and shall not be property of any debtor estate in any subsequent proceeding under chapter 7 of the Bankruptcy Code.

14.    Upon the Closing, the Debtors are authorized and directed to assume and assign each of the Assigned Contracts to the Purchaser free and clear of all Encumbrances. The payment of the applicable Cure Amounts (if any) shall (a) effect a cure of all defaults existing thereunder, whether monetary or otherwise, as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default and (c) together with the assumption of the Assigned Contracts by the Purchaser, constitute adequate assurance of future performance thereof. The Purchaser shall then have assumed the Assigned Contract and,

11

pursuant to Bankruptcy Code § 365(f), the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtors nor the Purchaser shall have any further liabilities to the non-Debtor parties to the Assigned Contracts other than the Purchaser's obligations under the Assigned Contracts that become due and payable on or after the Closing Date.

15.     Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition, upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under Bankruptcy Code §§ 363 and 365 for the assumption of the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the applicable Assigned Contracts.

16.     The Assigned Contracts shall, as of the Closing Date, be valid and binding on the Purchaser and the other non-Debtor counterparties thereto, and in full force and effect and enforceable in accordance with their respective terms. Following such assignment, the Debtors shall be relieved, pursuant to Bankruptcy Code § 365(k), from any further liability under the Assigned Contracts.

17.     Pursuant to Bankruptcy Code §§ 105(a), 363 and 365, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising

12

under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

18.    Effective upon the Closing Date, all parties are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Acquired Assets or Interests, with respect to any (a) Encumbrances arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Acquired Assets or Interests, or the operation of the Acquired Assets or Interests prior to the Closing, or (b) successor liability, under any theory and through any of the following means: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Encumbrances or other liens against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (v) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Acquired Assets or Interests conduct any of the businesses operated with the Acquired Assets or Interests.

19.    Except for the Assumed Liabilities or as otherwise expressly provided for in this Order or the Acquisition Agreement, the Purchaser shall not have any liability or other

13

obligation of the Debtors arising under or related to the Acquired Assets or Interests. Without limiting the foregoing, and except as otherwise specifically provided herein or in the Acquisition Agreement, the Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or Interests prior to the Closing. The Purchaser has given substantial consideration under the Acquisition Agreement for the benefit of the holders of Encumbrances. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against the Debtors or the Acquired Assets or Interests.

20.    The transactions contemplated by the Acquisition Agreement, Transition Services Agreement and Escrow Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in Bankruptcy Code § 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Proposed Sale shall not affect the validity of the Proposed Sale (including the assumption and assignment of the Assigned Contracts), unless such authorization and such Proposed Sale are duly stayed pending such appeal.

14

21.     Nothing in this Order shall be deemed to affect the application of section 363(o) of the Bankruptcy Code.

22.     Nothing in this Order or the Acquisition Agreement, Transition Services Agreement or Escrow Agreement approves or provides for the transfer to Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

23.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Proposed Sale.

24.     There are no brokers involved in consummating the Proposed Sale and no brokers' commissions are due.

25.     The failure specifically to include any particular provision of the Acquisition Agreement, Transition Services Agreement or Escrow Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Acquisition Agreement, Transition Services Agreement and Escrow Agreement be authorized and approved in their entirety.

26.     The Acquisition Agreement, Transition Services Agreement, Escrow Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

27.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

15

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.

30.     Nothing in this Order or the Acquisition Agreement releases, nullifies, or enjoins the enforcement against the Purchaser by the Environmental Protection Agency or any governmental unit under police and regulatory statutes or regulations authorized to enforce environmental laws of the United States or related regulations of any liability to such governmental unit under environmental laws of the United States or related regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Acquisition Agreement authorizes the transfer or assignment to the Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit concerning environmental laws of the United States or related regulations without the Purchaser's compliance with all applicable legal requirements under nonbankruptcy law governing such transfers or assignments.  Nothing in this Order or the Acquisition Agreement relieves or excuses the Purchaser from any legal obligations to obtain and comply with environmental permits necessary to operate facilities.

31.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Acquisition Agreement, Transition Services Agreement, Escrow Agreement and this Order.  To the extent any provisions of this Order shall be inconsistent with the Sale Motion, the terms of this Order shall control.

DB02:7907190.4

067999.1001

32.     Section 1.1(b)(iv) is hereby clarified that any rights and claims of the Sellers arising before the Closing against any directors, officers or other insiders, including any insurance claims with respect thereto, shall be deemed not to be "relating to the business" and therefore not an Acquired Asset as that term is defined therein.

33.     The proceeds of the sale shall be transferred to the Agent and the DIP Lenders. The mere fact that such transfer has occurred shall not impair or prejudice the rights and remedies of the Committee, the Agent or the DIP Lenders pursuant to the Final DIP Order.

Date: March 5, 2009

_____
Kevin J. Carey
Chief United States Bankruptcy Judge

DB02:7907190.4                    067999.1001