IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Interlake Material Handling, Inc., *et al.*,[1] | ) | Case No. 09-10019 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Ref. Docket Nos. <u>481 and 513</u> |

### ORDER AUTHORIZING AND APPROVING (A) MODIFIED ACQUISITION AGREEMENT, (B) SALE OF CERTAIN ASSETS AND INTERESTS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) RELATED RELIEF

Upon the *Motion of the Debtors' for Orders (I)(A) Approving Bid Procedures for the Sale of a Portion of J&D's Assets, (B) Scheduling the Auction, (C) Authorizing Payment of the Break-Up Fee, (D) Approving the Deposit, (E) Scheduling the Sale Hearing, (F) Approving the Assumption and Assignment Procedures Related to the Sale and (G) Approving the Form of the Sale Notice; and (II) (A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving Purchase Agreement, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto and (D) Granting Related Relief* dated May 20, 2009 [Docket No. 481] (the "<u>J&D Sale Motion</u>")[2], notice of the J&D Sale Motion being proper and sufficient and all interested parties having been afforded an opportunity to be heard with respect to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Interlake Material Handling, Inc. (9435); United Fixtures Company, Inc. (2048); UFC Interlake Holding Co. (9905); Conco-Tellus, Inc. (9950); and J&D Company LLC (6376). The address for all of the Debtors is 1230 E. Diehl Road; Suite 400, Naperville, Illinois 60563, except for United Fixtures Company, Inc., whose address is 4300 Quality Drive, South Bend, Indiana 46628 and J&D Company LLC, whose address is 600 Hunter Lane, Middletown, PA 17057.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the J&D Sale Motion and the Modified Acquisition Agreement that is appended hereto. Each and every reference to the Acquisition Agreement in the J&D Sale Motion shall be deemed to refer to the corresponding portion of the Modified Acquisition Agreement.

J&D Sale Motion; and upon review and consideration of (i) the J&D Sale Motion; (ii) objections thereto, if any; (iii) arguments of counsel and evidence proffered or adduced at the hearing on the J&D Sale Motion, if any (the "Sale Hearing"); and (iv) the docket and proceedings in the above-captioned cases (the "Chapter 11 Cases"); and it appearing that the relief requested in the J&D Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest:

THE COURT FINDS THAT:[3]

A.  This Court has jurisdiction over the J&D Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases and the J&D Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief sought in the J&D Sale Motion are Bankruptcy Code §§ 105, 363 and 365, and Bankruptcy Rules 2002, 6004, 6004-1, 6006, 9007 and 9014. Consummation of the transactions contemplated by this Order and the Modified Acquisition Agreement (the "Sale") is legal, valid and properly authorized under the foregoing statutory predicates and all applicable requirements of such provisions have been complied with in respect of the Sale.

C.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004 and 6006, and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for

---

[3] Regardless of the heading under which they appear, any (1) findings of fact that constitute conclusions of law shall be conclusions of law and (2) conclusions of law that constitute findings of fact shall be findings of fact. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the J&D Sale Motion are incorporated herein to the extent not inconsistent herewith.

delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

D.      Actual and timely notice of the J&D Sale Motion, Sale Hearing, the Auction, the Sale and the assumption and assignment of the Purchased Contracts, in sufficient form and substance, has been served on, and a reasonable opportunity to object or be heard with respect to the J&D Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the United States Trustee; (ii) counsel to National City Business Credit, Inc.; (iii) counsel to Roynat Business Capital, Inc.; (iv) counsel to the Purchaser; (v) counsel to the Committee; (vi) all parties known or reasonably believed to have asserted a Lien on any of the Purchased Assets; (vii) the counterparties to each of the Purchased Contracts; (viii) all persons or entities known or reasonably believed to have expressed an interest in acquiring the Purchased Assets; (viii) all federal, state and local taxing authorities having jurisdiction over any of the Purchased Assets or the ownership or operation of the RSS Assets by the Debtors; (ix) the Attorneys General in the States where the Purchased Assets are located; (x) the United States Environmental Protection Agency and comparable State agencies where the Purchased Assets are located; (xi) J&D's thirty largest creditors; and (xii) all parties that have requested personal notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

E.      The Debtors published notice of the Sale of the Purchased Assets, the time and place of the proposed Auction of the Purchased Assets, and the time and place of the Sale Hearing in The Wall Street Journal on June 2, 2009.

F.      In accordance with the provisions of the Bid Procedures Order and Assumption & Assignment Procedures, the Debtors have served notice of the Cure Amounts as of the Closing Date (the "Cure Notice") upon each counterparty to a Purchased Contract. The service of such

Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the Purchased Contract. Counterparties to the Purchased Contracts have had a reasonable and appropriate opportunity to object to the Cure Amount set forth in the Cure Notice and the potential assignment and assumption of such Purchased Contracts.

G.  As evidenced by the affidavits of service filed with the Court in the Chapter 11 Cases, proper, timely, adequate, and sufficient notice of the J&D Sale Motion, the Auction, the Sale Hearing and the Sale has been provided in accordance with Bankruptcy Code §§ 102(1), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the J&D Sale Motion, the Auction, the Sale Hearing and the Sale as required by the Bid Procedures Order. The foregoing notice described in paragraphs D through G hereof was good, sufficient and appropriate under the circumstances, and no other or further notice of the J&D Sale Motion, the Auction, the Sale Hearing and the Sale or the assignment of the Purchased Contracts or the entry of this Order is required.

H.  The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of Bankruptcy Code § 363(m), and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (1) The Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (2) The Purchaser complied with the provisions in the Bid Procedures Order; (3) The Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (4) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (5) The Purchaser has not violated

Bankruptcy Code § 363(n) by any action or inaction; (6) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the Modified Acquisition Agreement and other agreements or instruments related thereto were at arm's-length, without collusion and in good faith. The Purchaser will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Modified Acquisition Agreement at any time after the entry of this Order.

I.   The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The Auction afforded a full, fair and reasonable opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.

J.   The terms of the Modified Acquisition Agreement are fair and reasonable. The Modified Acquisition Agreement and the purchase price set forth therein constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternatives. The Debtors' determination that the Modified Acquisition Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

K.   The Modified Acquisition Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Chapter 11 Cases. No other party has offered to purchase the Purchased Assets (or the respective assets of the RSS Division) for greater economic value to the Debtors' estate.

L.  The Deposit under the Modified Acquisition Agreement is integral to the terms of the Modified Acquisition Agreement.

M.  The Purchaser would not have entered into the Modified Acquisition Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estate, and creditors, if the sale of the Purchased Assets and the assignment of the Purchased Contracts to it were not free and clear of all Liens, or if the Purchaser would, or in the future could, be liable for any of the Liens or liabilities of the Debtor or any other owner of the Purchased Assets, other than the Assumed Liabilities.

N.  Approval of the J&D Sale Motion, the Modified Acquisition Agreement, the assignment of the Purchased Contracts, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

O.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

P.  The consideration provided by the Purchaser pursuant to the Modified Acquisition Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession or the District of Columbia.

Q.  The Debtors have full corporate power and authority to execute and deliver the Modified Acquisition Agreement and all other documents to be entered into in connection therewith or contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Modified Acquisition Agreement.

DB02:8224117.2                                                                                                                            067999.1001

R. The transfer of the Purchased Assets to the Purchaser will be as of the Closing Date under the Modified Acquisition Agreement a legal, valid and effective transfer of such assets and interests, and vests or will vest in the Purchaser good and marketable title in and all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens, claims or adverse interests of any kind or nature whatsoever, accruing, arising or relating to any time prior to the Closing Date, except for any Assumed Liabilities as specifically set forth the Modified Acquisition Agreement.

S. The Debtors may sell the Purchased Assets free and clear of all Liens because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Liens, against the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the J&D Sale Motion are deemed to have consented to the Sale free and clear of their interest pursuant to Bankruptcy Code § 363(f)(2). Those holders of Liens that objected fall within one or more of Bankruptcy Code 636(f)(1), (3)-(5) and are adequately protected by having their Liens attach to that portion of the cash proceeds of the Sale attributable to their Liens, in the same order of priority, with the same validity, force and effect that such holder had prior to the Sale.

T. The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the Modified Acquisition Agreement and is in the best interests of the Debtors and their estates, their creditors and other parties in interest, and represents the reasonable exercise of the Debtors' sound business judgment.

U. The respective amounts set forth in the Contract & Cure Schedule are the sole amounts necessary under Bankruptcy Code § 365 to cure all monetary defaults and pay all actual pecuniary losses under the Purchased Contracts. All non-Debtor parties to the Purchased

7

Contracts are deemed to have consented to the assignment of such Purchased Contracts pursuant to Section 105 and 363(f)(2) of the Bankruptcy Code.

V. The Debtors have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Purchased Contracts, within the meaning of Bankruptcy Code § 365(b)(1)(A); and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Purchased Contracts, within the meaning of Bankruptcy Code § 365(b)(1)(B).

W. The Debtors and/or the Purchaser have provided adequate assurance of future performance under the Purchased Contracts within the meaning of Bankruptcy Code § 365(b)(1)(C), (b)(3) (to the extent applicable) and (f)(2)(B).

X. To maximize the value of the Purchased Assets and preserve the viability of the businesses to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Modified Acquisition Agreement. Time is of the essence in consummating the Sale.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The J&D Sale Motion is approved in its entirety on the merits and the relief sought therein is granted.

2. All objections to the relief requested in the J&D Sale Motion that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, are overruled in all respects on the merits.

3.  The Modified Acquisition Agreement and all other ancillary documents contemplated thereby or to be entered into in connection therewith, and all of the terms and conditions thereof and all transactions contemplated thereby, are approved in their entirety.

4.  Pursuant to Bankruptcy Code § 363(b), the Debtors and their officers, employees and agents are authorized, empowered and directed to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Modified Acquisition Agreement; (ii) close the Sale as contemplated in the Modified Acquisition Agreement and this Order; (iii) execute and deliver, perform under, consummate, implement and close fully the Modified Acquisition Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Modified Acquisition Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Modified Acquisition Agreement and such ancillary documents; and (iv) and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, conferring or reducing to possession the Purchased Assets to the Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Modified Acquisition Agreement and the other agreements, exhibits, instruments or documents contemplated thereby.

5.  The terms and provisions of this Order shall be binding in all respects upon the Purchaser, and Debtors, any trustees thereof, the estates, creditors and shareholders of the Debtors, all interested parties and their respective successors and assigns, including without

limitation, any creditor asserting a Lien on the Purchased Assets and all non-debtor counterparties to the Purchased Contracts.

6. Pursuant to Bankruptcy Code §§ 105(a), 363(f) and 365, the Debtors are authorized and directed to transfer the Purchased Assets to the Purchaser on the Closing Date. The Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of good and marketable title to the Purchased Assets and, upon the Debtors' receipt of the Purchase Price *less* the Deposit, shall be free and clear of all Liens with all such Liens to attach to the net proceeds of the Sale with the same validity, priority, force and effect that they had as against the Purchased Assets prior to the Closing. Following the Closing Date, no holder of a Lien against the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in its Chapter 11 case.

7. Except as expressly permitted or otherwise specifically provided by the Modified Acquisition Agreement or this Order, all parties holding Liens or interests in the Purchased Assets or claims against the Debtors or the assets of the Debtors, arising under or out of, in connection with, or in any way relating to the Debtors, Purchased Assets, the operation of J&D's or its predecessors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such parties' interests in and to or claims against any Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens (except Assumed Liabilities as defined in the Modified Acquisition

Agreement) on the Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

8. All parties are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Modified Acquisition Agreement and this Order.

9. All parties that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of the Purchased Assets to the Purchaser or its assignee at the Closing.

10. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Liens and other liens of record.

11. If any party which has filed statements or other documents or agreements evidencing Liens on, or interests in, any or all of the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases necessary to evidence the release of all Liens, which the party has or may assert with respect to the Purchased Assets, the Debtors are authorized and directed, and the Purchaser is authorized, to execute and file such statements, instruments, and other documents on behalf of such person or entity with respect to the Purchased Assets.

12. This Order is and shall be binding upon and govern the acts of all parties, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other parties

who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Modified Acquisition Agreement.

13. Any amounts deposited with the Escrow Agent pursuant to the Modified Acquisition Agreement are not property of the Debtors or their estates in the above-captioned chapter 11 case and shall not be property of any debtor estate in any subsequent proceeding under chapter 7 of the Bankruptcy Code.

14. Upon the Closing Date, the Purchaser is granted immediate and unrestricted access to the Purchased Assets conveyed at the Closing. The Debtors and their subsidiaries, and each of their employees, officers and directors and any other entity that may have possession or control over items such as keys, lock boxes, security codes, computer access codes, telephone access codes and other similar devices, shall turn over such devices (or control or access to such devices) to the Purchaser immediately upon the Closing as to the Purchased Assets conveyed at the Closing. The Debtors and such entities are enjoined after the Closing from exercising any control and/or interfering with the Purchaser's use, peaceful enjoyment and control of the Purchased Assets.

15. Upon the Closing, the Debtors are authorized and directed to pay all Cure Amounts to the non-Debtor parties to the Purchased Contracts and assume, assign and sell each of the Purchased Contracts to the Purchaser free and clear of all Liens. The payment of the applicable Cure Amounts (if any) shall (a) effect a cure of all defaults existing thereunder,

whether monetary or otherwise, as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default and (c) together with the assumption of the Purchased Contracts by the Purchaser, constitute adequate assurance of future performance thereof. The Purchaser shall then have purchased and assumed the Purchased Contracts and, pursuant to Bankruptcy Code § 365(f), the assignment and sale by the Debtors of such Purchased Contracts shall not be a default thereunder. After the payment of the Cure Amounts, neither the Debtors nor the Purchaser shall have any further liabilities to the non-Debtor parties to the Purchased Contracts other than the Purchaser's obligations under the Purchased Contracts that first arise and become due and payable on or after the Closing Date.

16. Any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the non-Debtor party to such Purchased Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition, upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under Bankruptcy Code §§ 363 and 365 for the assumption of the Debtors and assignment to the Purchaser of the Purchased Contracts have been satisfied. Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Purchased Contracts.

17. The Purchased Contracts shall, as of the Closing Date, be valid and binding on the Purchaser and the other non-Debtor counterparties thereto, and in full force and effect and enforceable in accordance with their respective terms. Following such assignment, the Debtors

shall be relieved, pursuant to Bankruptcy Code § 365(k), from any further liability under the Purchased Contracts.

18.     Pursuant to Bankruptcy Code §§ 105(a), 363 and 365, all parties to the Purchased Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Purchased Contracts existing as of the Closing Date or arising by reason of the Closing.

19.     Effective upon the Closing Date, all parties are forever prohibited and enjoined from asserting, commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Liens or claims of any kind, whatsoever, arising under, out of, in connection with or in any way relating to the Debtors, the formation of J&D and the transfer of the assets thereto, the Purchaser, the Purchased Assets, the termination of employment of any employee of the Debtors (including any claims under COBRA), or the operation of the Purchased Assets prior to the Closing, or (b) successor liability, under any theory whatsoever, including without limitation, through any of the following means:  (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Liens, or other liens against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does

not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (v) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

20. Except for the Assumed Liabilities assumed under the Modified Acquisition Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to the Purchased Assets. Without limiting the foregoing, and except as otherwise specifically provided herein or in the Modified Acquisition Agreement, the Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the Modified Acquisition Agreement for the benefit of the holders of Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against the Debtors or the Purchased Assets.

21. The transactions contemplated by the Modified Acquisition Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in Bankruptcy Code § 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Purchased Contracts). The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order are hereby waived.

22. The Sale includes the assignment and transfer of certain avoidance actions and other claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates which are included in the Purchased Assets as set forth in the Modified Acquisition Agreement. Such sale, assignment and transfer is hereby approved and the Debtors and their creditors, interest holders, successors and anyone claiming by or through any of them are forever barred from asserting any such claims or actions.

23. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale, and if applicable, such laws are hereby waived.

24. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

25. The failure specifically to include any particular provision of the Modified Acquisition Agreement or any other agreement, instrument, exhibit or document contemplated thereby in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Modified Acquisition Agreement and all other agreements, instruments, exhibits and documents contemplated thereby be authorized and approved in their entirety.

26.     The Modified Acquisition Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

27.     The proceeds of the Sale shall be transferred to the Agent and the DIP Lenders. The mere fact that such transfer has occurred shall not impair or prejudice the rights and remedies of the Committee, the Agent or the DIP Lenders pursuant to the Final DIP Order.

28.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

29.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the J&D Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.

31.     Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order of confirmation confirming any plan of reorganization or liquidation, nor any order dismissing the case or converting it to a chapter 7 liquidation, shall conflict with or derogate from the provisions of this Order.

32.     Each and every term and provision of this Order shall be binding in all respects upon the Purchaser, the Debtor, the Debtor's bankruptcy estate, its creditors, all individuals or entities holding an interest in the Debtor, all non-Debtor parties to the Purchased Contracts, all

other entities and third parties, including, without limitation, any entity purporting to hold a lien or Liens against the Purchased Assets.

33. Nothing in this Order or the Modified Acquisition Agreement releases, nullifies, or enjoins the enforcement against the Purchaser by the Environmental Protection Agency or any governmental unit under police and regulatory statutes or regulations authorized to enforce environmental laws of the United States or related regulations of any liability to such governmental unit under environmental laws of the United States or related regulations that any entity would be subject to as the owner or operator of property for events or circumstances first arising after the date of entry of this Order.  Nothing in this Order or the Modified Acquisition Agreement authorizes the transfer or assignment to the Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit concerning environmental laws of the United States or related regulations without the Purchaser's compliance with all applicable legal requirements under nonbankruptcy law governing such transfers or assignments.  Nothing in this Order or the Modified Acquisition Agreement relieves or excuses the Purchaser from any legal obligations to obtain and comply with environmental permits necessary to operate facilities.

34. This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Modified Acquisition Agreement and this Order. To the extent any provisions of this Order shall be inconsistent with the J&D Sale Motion, the terms of this Order shall control.

Date: June 2#, 2009

Kevin J. Carey
United States Bankruptcy Judge

DB02:8224117.2

067999.1001